## Troy License

*Theodore L. Krohn,* for appellant.

*James Lenahan Brown,* for Commonwealth.

SCHIFFMAN, J., January 26, 1962.—This matter comes before the court on a petition for hearing de novo, the circumstances under which Isiah Troy's motor vehicle operator's privileges were suspended by the Secretary of Revenue of this Commonwealth.

On August 21, 1961, Isiah Troy's operating privileges were indefinitely suspended. The alleged basis was his failure to successfully complete "a special operator's examination."

The Commonwealth presented the testimony of John R. Cummings, a Pennsylvania State policeman. This officer testified that he had been a State police officer for 24½ years. He stated that for the past 22 years, his primary duty was passing on the qualifications of applicants for operators' licenses.

Trooper Cummings testified that Mr. Troy was tested on the grounds used for that purpose at the Wyoming barracks on August 9, 1961. He stated that there petitioner failed to stop at a stop sign on the testing grounds. He further indicated the sign was clearly visible, and the significance of the failure to stop. Further testimony was to the effect that other phases of the test were properly completed. The officer did not observe any disqualifying physical deficiencies. However, he felt that the failure to stop at the aforementioned sign evidenced driving incompetence. He testified that he instructed petitioner as to reexamination procedure.

The Commonwealth also presented the testimony of Leonard P. Walsh, a Pennsylvania State police officer of 11 years' experience. He testified one of his principal duties was testing to determine driving fitness. He stated he tested petitioner on August 22, 1961, at the driving range mentioned in Trooper Cummings'

testimony. He also testified that Mr. Troy negotiated the testing pattern fairly well, except that he hit a curb with his rear wheels during a turn. Trooper Walsh testified he had reservations about petitioner's driving competence, and he extended the tests to a highway nearby. The officer then testified that he observed some confusion on the driver's part as well as actual infractions. He stated that during the tests, petitioner drove at speeds four to five miles in excess of the posted speed limit. Mr. Walsh then testified that he finally determined petitioner was not a safe and competent driver.

Petitioner presented the testimony of several witnesses. The substance of their testimony was that they had known Mr. Troy for a period of time and that they were familiar with his driving habits. These witnesses stated, to the best of their knowledge, petitioner was a careful driver and had never been involved in any serious accidents.

The testimony of Isiah Troy indicated he is 70 years of age, and that he has driven a motor vehicle for approximately 36 years. He testified that he had never been involved in a serious accident. He stated that his license had never been revoked except in the instant matter. He indicated his business required his active daily use of his car. He asserted his driving competence and explained that the aforementioned tests were made while he was severely emotionally distressed. He testified that the sudden death of his wife in June 1961 had left him in a highly nervous condition. He believed another examination would now demonstrate his driving competence.

The question for the court's consideration is whether or not the determination of petitioner's driving incompetence is properly supported by the evidence.

This court was impressed by the candor and fairness of the State police officers who testified. They were

conscientiously aware of their responsibility of safeguarding the highways. Public policy requires a constant and vigilant endeavor toward this goal.

The testimony warrants the suspension. No other conclusion would be consistent with the protection of the public interest.

Justice requires one further consideration in this matter. We are mindful of the emotional impact and mental stress resulting from the loss of a loved one. It is reasonable to assume that these circumstances might have adversely affected petitioner's ability to successfully complete the test. We feel that justice requires another test under fair circumstances.

Accordingly, January 26, 1962, we enter the following

### Order

It is hereby ordered and decreed that the petition be dismissed, and that the suspension of petitioner's operating privileges by the Secretary of Revenue be affirmed. Costs to be paid by petitioner, and, in view of the emotional circumstances of petitioner when tested and the necessity of a fair retest, since petitioner now believes the disqualifying emotional barriers are no longer present, it is also ordered and decreed that the Secretary of Revenue authorize a fair retest promptly to petitioner.